IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| ARTHUR WEISS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07-5037-CV-SW-WAK |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Arthur Weiss obtained a mortgage and then enrolled in an accelerated ownership plan (AOP) with defendant Wells Fargo Bank, N.A. The AOP program allowed the bank to withdraw one-half of plaintiff's monthly mortgage payment from his bank account every two weeks. The purpose of the two-week program was to increase equity at a faster rate and to decrease the amount of interest accrued on the loan. Wells Fargo withdrew the funds every two weeks, but only made mortgage payments[1] every four weeks. This schedule would have resulted in thirteen payments over the course of twelve months. When he enrolled in the program, plaintiff believed the funds would be applied to his mortgage every two weeks. He was not informed that the first of every two withdrawals would be held for two weeks prior to being applied to the loan.

Plaintiff initially filed a putative class action suit on March 22, 2007, in the Circuit Court of Newton County, Missouri, alleging several violations of state law. Defendant removed the matter to federal court based on diversity jurisdiction and the Class Action Fairness Act of 2005. Plaintiff then filed an amended complaint on June 12, 2007, alleging a state law violation of the Merchandising Practices Act (MPA), Mo. Rev. Stat. § 407.020, and unjust enrichment. Plaintiff, on his own behalf and that of the putative class, seeks damages, an injunction and declaratory relief.

---

[1]It is not clear from the current pleadings whether Wells Fargo was the holder of the mortgage, so the court cannot say whether Wells Fargo forwarded payments to another institution or whether they applied the funds to a mortgage it held.

Defendant has moved for judgment on the pleadings on the theory that plaintiff's claims are preempted by the National Bank Act, 12 U.S.C. § 1 et seq. Plaintiff responded in opposition to the motion and defendant replied.

**Legal Standard**

The standard for judgment on the pleadings is a strict one. The movant must clearly establish there are no material issues of fact, and judgment is appropriate as a matter of law. Elnashar v. United States Dep't of Justice, 446 F.3d 792, 794 (8th Cir. 2006); Lion Oil Co., Inc. v. Tosco Corp., 90 F.3d 268, 270 (8th Cir. 1996); National Car Rental System, Inc. v. Computer Associates Intern., Inc., 991 F.2d 426, 428 (8th Cir. 1993). When considering the issues, the court accepts as true the facts pled by the nonmoving party and draws all reasonable inferences from the pleadings in that party's favor. Id.

**Preemption Standard**

"National banks' business activities are controlled by the National Bank Act (NBA), 12 U.S.C. § 1 et seq., and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC), see §§ 24, 93a, 371(a). OCC is charged with supervision of the NBA and, thus, oversees the banks' operations and interactions with customers." Watters v. Wachovia Bank, N.A., ___ U.S. ___, ___, 127 S. Ct. 1559, 1561 (2007).

Historically, the Court has "held federal law supreme over state law with respect to national banking." Id. at 1566. The NBA was enacted in 1864 and has been interpreted to shield national banks from unduly burdensome and duplicative state regulation. Nevertheless, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purpose of the NBA." Id. at 1567. States may regulate national bank activities where the regulations are not contrary to federal law and do not prevent or significantly interfere with the exercise of power by the bank or the bank regulator. If state laws or regulations significantly impair the "exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." Id. (citing Barnett Bank of Marion Cty., N.A. v. Nelson, 517 U.S. 25, 32-34 (1996)).

"[S]tate law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility.' . . . or when state law 'stands as an obstacle to the accomplishment and

2

execution of the full purposes and objectives of Congress.'" Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982) (internal citations omitted).  Federal regulations may preempt state law to the same extent federal statutes do.

## Discussion

Defendant, a national bank, characterizes plaintiff's complaint as one relating to advertising and disclosure.  Citing 12 C.F.R. § 34.4(a)(9), defendant states it may make real estate loans without regard to state laws concerning disclosures and advertising, including laws requiring specific statements, information and other content to be included in certain documents.

Plaintiff responds that his claim is not preempted by the National Bank Act and OCC regulations because he is asserting defendant made false and misleading statements to consumers in its advertising materials.  Plaintiff argues that his claim arises under the MPA[2], which is a statute of general applicability; the MPA is not inconsistent with federal law; federal law does not expressly preempt it; and it merely provides plaintiff with a remedy for damages caused by violations of state and federal law.

The court has found only a few nondispositive cases brought by consumers addressing bank advertising, disclosure requirements or misrepresentation of bank products or services.  The cases cited by the parties are fact-specific, are not directly on point, and can be distinguished from this case on that basis.

The lack of cases may be explained, in large part, by federal regulations, 12 C.F.R. § 34.4(a)(9) and 12 C.F.R. § 7.4008(d)(2)(viii), which permit banks to make loans without regard to "disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents."  These regulations expressly provide that bank advertising and disclosures are not subject to state law.

Advertising issues were addressed, to a limited degree, in cases such as Franklin National Bank v. New York, 347 U.S. 373 (1954), and Bank One, Utah National Association v. Guttau, 190 F.3d 844 (8th Cir. 1999).  In Franklin, local advertising restrictions were preempted because

---

[2]Mo. Rev. Stat. § 407.020.

3

they burdened the exercise of the bank's incidental power to advertise. Likewise, a state law prohibiting advertising on ATM's was preempted in Bank One.

Clearly, one of the purposes of the National Bank Act was to "prevent inconsistent or intrusive state regulation from impairing the national system." Watters v. Wachovia Bank, N.A., 127 S. Ct. at 1566. Thus, to the extent plaintiff's complaint is viewed solely as one addressing advertising and disclosure requirements, his claims are expressly preempted by federal law and regulation, 12 C.F.R. § 34.4(a)(9) and 12 C.F.R. § 7.4008(d)(2)(viii), and preemption is consistent with the purpose of the NBA.

Plaintiff's claims are still preempted if the case is viewed, as he characterizes it, as one seeking damages under state law for false and misleading statements made to consumers. Plaintiff appears to concede the statements were made in the course of defendant's advertising.

Under the specific facts of this case, the Missouri MPA, a consumer protection statute, is preempted because it impedes the OCC's exercise of its regulatory and enforcement powers, which also cover consumer protection.

Congress has delegated certain responsibilities to the OCC. The OCC is the bank's regulator and it has broad rule-making authority. "Under 12 U.S.C. § 93a, the OCC is authorized 'to prescribe rules and regulations to carry out the responsibilities of the office' and, under 12 U.S.C. § 371 to 'prescribe by regulation or order' the 'restrictions and requirements' on national banks' real estate lending power without state-imposed restrictions." Office of the Comptroller of the Currency, Preemption Final Rule, 23 No. 1 OCC Q.J. 28, 7, 2004, available at 2004 WL 2360325 (O.C.C.).

In amending the preemption rules in 2004 to specifically include consumer protection provisions, the OCC acted to "ensure the soundness and efficiency of national banks' operations by making clear the standards under which they do business." Id. at 9.

The OCC article addressing the 2004 amendments, cited above, states that the list of the types of preempted state laws is not intended to be exhaustive, and that the OCC retains the ability to determine, on a case-by-case basis, whether other state laws are preempted under the applicable standards.

It also states that the standards set forth in 12 C.F.R. § 7.4008, when coupled with an array of federal consumer protection standards, "ensure that national banks are subject to

4

consistent and uniform federal standards, administered and enforced by the OCC, that provide strong and extensive customer protections and appropriate safety and soundness-based criteria for their lending activities." Id. at 16. The article advises that the OCC will not tolerate predatory and abusive lending practices and that the OCC's enforcement positions have resulted in substantial restitution to affected consumers.

The OCC is the proper agency to issue interpretations of the statutes and regulations, as well as to enforce them. "It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute." Nationsbank of North Carolina v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256 (1995). The OCC has indicated it will enforce consumer protection statutes and that federal law provides uniform and comprehensive protections. The court is required to give considerable weight to the OCC's statement that it will enforce such statutes.

Plaintiff acknowledges in his brief that Congress has given the OCC authority to prosecute or sanction banks that engage in unfair or deceptive acts or practices. Under 12 C.F.R. § 7.4008, "[a] national bank shall not engage in unfair or deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and regulations promulgated thereunder in connection with loans made under this § 7.4008." Section 45(a)(1) of the FTCA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

The FTCA clearly encompasses the type of claim here, where plaintiff claims defendant failed to disclose information that was material to his decision on whether to participate in the AOP program. The OCC has been given the authority to enforce the FTCA, to issue remedial orders and to order restitution to consumers when deemed appropriate. The OCC has also been given the authority to enforce state consumer protection laws if it determines those laws are not preempted by federal statutes or regulations.

Permitting a separate remedy and suit under the MPA, on the facts of this case, would be inconsistent with providing a consistent and uniform federal standard. What constitutes a deceptive practice or misrepresentation in this case under state law might be different than what the OCC would find to be deceptive or a misrepresentation. Further, equitable relief fashioned by the court could be contrary to or inconsistent with what the OCC would find appropriate

5

under the facts, could interfere with the OCC's exercise of its regulatory and enforcement powers, and would stand "as an obstacle to the accomplishment and execution of the full purposes and objective of Congress" in enacting the NBA.  See Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. at ___, 102 S. Ct. at 3022.

Accordingly, defendant's motion for judgment on the pleadings is granted on the basis of federal preemption.

For the reasons set forth above, it is

ORDERED that defendant's motion of March 4, 2008, for judgment on the pleadings is granted, and plaintiff's claims are dismissed because preempted by the National Bank Act.  [26] It is further

ORDERED that plaintiff's motion of June 3, 2008, to certify a class is denied.  [33]

Dated this 1st day of July, 2008, at Jefferson City, Missouri.

/s/ William A. Knox

WILLIAM A. KNOX
United States Magistrate Judge